UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ANGEL DONE,

                Plaintiff,

         -against-

WELLS FARGO, N.A., PRIYA M. MONDKAR,
OPTION ONE MORTGAGE LOAN TRUST 2004-3
ASSET BACKED CERTIFICATES SERIES 2004-3,
SECURITIES AND EXCHANGE COMMISSION,

                Defendants.
------------------------------------------------------------------------X

MEMORANDUM and ORDER
12-CV-04296 (JFB)(ETB)

Joseph F. Bianco, District Judge:

On July 13, 2012, *pro se* plaintiff Angel Done ("plaintiff") filed a complaint against Wells Fargo, N.A. ("Wells Fargo"), Priya M. Mondkar ("Mondkar"), Option One Mortgage Loan Trust 2004-3 Asset Backed Certificates Series 2004-3 ("Option One"), and the United States Securities and Exchange Commission ("SEC") (collectively, "defendants"), in the Supreme Court of the State of New York, Suffolk County, and his complaint was assigned Case No. 12-21067. On August 27, 2012, the SEC filed a notice of removal pursuant to Federal Rule of Civil Procedure 81 and 28 U.S.C. § 1442. The SEC and Mondkar (together, "the moving defendants"), have each filed a pre-answer motion to dismiss plaintiff's complaint.[1]

On November 28, 2012, the SEC filed a motion to dismiss the complaint as against it pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, claiming that: (1) it is immune from plaintiff's suit and there is no basis to waive sovereign immunity; (2) insofar as

---

[1] Neither Wells Fargo nor Option One have appeared in this action. Plaintiff has not filed affidavits reflecting that the summons and complaint have been served upon these defendants and the 120-day period within which to so serve them has long expired. See Fed. R. Civ. P. 4(m). Accordingly, plaintiff's claims against these defendants are dismissed without prejudice.

plaintiff's claims arise under the Federal Tort Claims Act ("FTCA"), plaintiff has not exhausted all administrative remedies prior to commencing this action as is required by the FTCA; and (3) the complaint fails to state a claim for relief. On November 29, 2012, Mondkar also filed a pre-answer motion to dismiss the complaint. Because plaintiff has already litigated and lost the foreclosure action in state court, insofar as plaintiff seeks to collaterally attack the state court judgment that divested him of title to the subject premises, Mondkar argues that any such claims in the present case are barred by the Rooker-Feldman doctrine – Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) – and by the doctrine of *res judicata*. Mondkar also seeks dismissal of plaintiff's claims against her pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief, and seeks cancellation of the notice of pendency filed by plaintiff pursuant to Section 6501 of the N.Y. Civil Practice Laws and Rules. Finally, Mondkar requests that the Court enter a litigation injunction against plaintiff to prevent any further efforts by him to re-litigate the foreclosure and sale of the subject premises.

Plaintiff sought and received an extension of time to respond to these motions and, on January 15, 2013, plaintiff filed his opposition. Plaintiff does not at all address the moving defendants' arguments concerning the impropriety of plaintiff's efforts to re-litigate his state court foreclosure action here. Rather, plaintiff's brief opposition, which is largely comprised of excerpts from the Federal Rules of Civil Procedure and federal case law, asserts in a conclusory fashion that "there are genuine issues of material fact," and that "plaintiff did state a claim for which relief can be granted." (Pl.'s Opp'n at 2.) Mondkar and the SEC submitted reply papers, respectively, on January 22 and 29, 2013.

For the reasons that follow, the motions to dismiss are granted and Mondkar's request to

cancel the notice of pendency is likewise granted. However, Mondkar's application for a litigation injunction is denied at this time. Because the defects in plaintiff's claims against these defendants would not be cured if given an opportunity to replead, leave to amend is denied, the complaint is dismissed with prejudice as against the moving defendants, and the Clerk of the Court is directed to close this case.

## FACTUAL BACKGROUND

The following facts are taken from plaintiff's complaint. These facts are not findings of fact by the Court. Instead, the Court assumes these facts to be true for purposes of deciding the pending motions to dismiss, and will construe them in a light most favorable to plaintiff, the non-moving party.

This is plaintiff's fourth attempt in this Court to challenge an underlying state court mortgage foreclosure proceeding.[2] Plaintiff generally alleges that "[t]his case surrounds the evidence of fraud, theft of title, banking fraud, mail fraud and scheme to defraud others along with conspiracy of theft of equity." (Compl. ¶ 9.) According to the complaint, plaintiff, the legal and rightful owner of the property located at 200 Kings Park Road, Commack, New York, is the victim of an illegal foreclosure by Wells Fargo Bank. (Id. ¶ 15.) Apart from the threadbare allegation that "the SEC failed to issue a public notice," wholly absent from the complaint are any factual allegations of

---

[2] Plaintiff's first case in this Court, Done v. Wells Fargo Bank, N.A., 08-3040(JFB)(ETB), was dismissed by Order Adopting Report and Recommendations, dated September 15, 2009. Plaintiff's next case, Done v. HSBC Bank USA, et al., 09-4878(JFB)(ETB), was dismissed by Order Adopting Report and Recommendations, dated September 23, 2010. After the present case was removed to this Court from state court, plaintiff filed a new *in forma pauperis* complaint in this Court, Done v. Mortgage Electronic Registration Systems, Inc., 13-404(JFB)(ETB). The undersigned *sua sponte* dismissed that case by Order dated April 4, 2013, for lack of subject matter jurisdiction.

3

conduct or inaction by any defendant. (Id. ¶ 13.) Rather, the complaint is largely comprised of a narrative describing general "predatory lending issues." (Id. ¶ 16.) For example, plaintiff explains:

> Predatory lending [] [h]as become one of the most critical policy issues facing the financial services industry, particularly mortgage lending. Nearly every federal financial services regulatory agency had publicly denounced predatory lending and called for more effective regulation to address it. Legislation has ben proposed in congress and several states to combat predatory lending, and trade associations and individual financial institutions have declared their concerns. Also, the Federal Reserve Board has proposed a rule to require lenders to report annual percentage rates for all loans, a measure that could help identify predatory lenders. Predatory loans are characterized by excessively high interest rates or fees, and abusive or unnecessary provisions that do no[t] benefit the borrower, including balloon payments or single-premium credit life insurance, large prepayment penalties, and underwriting that ignores a borrower's repayment ability. Yet, although high interest rates or fees are common characteristics of predatory loans, high-cost loans are not necessarily predatory. Today, predatory lenders use sophisticated technology and numerous sources of publicly available data to identify potential customers. They market their products to customers they identify as financially unsophisticated or vulnerable, and therefore most likely to accept highly unfavorable loan terms. In particular, as in the matter before this court, predatory lenders look for people with limited educations who are not adept in financial matters and lack financial sophistication to scrutinize loans. Such lenders often prey on household[s] that have limited incomes but significant equity in their homes. The second characteristic of a predatory loan is the set of abusive terms it contains. Predatory loan terms are structured to extract the greatest possible return to the lender. For equity stripping purposes, they are also routinely designed to preclude a borrower's ability to repay the loan, just as this case demonstrates. The loan itself may be unnecessarily large, even in excess of 100 percent loan to value ration [sic]. As long as the amount of the loan exceed[s] the fair market value of the home it is difficult for the owner to refinance the mortgage or to sell the house to pay off the loan.

(Id.) The complaint continues for several pages in this fashion, and is immediately followed by plaintiff's prayer for relief. Plaintiff seeks an unspecified sum of monetary damages as well as

4

injunctive relief: (1) staying the leasing, selling, renting or otherwise transferring the real property that is the subject of this action pending the outcome of this case; (2) compelling "Wells Fargo Bank to produce and provide all material evidence of legal standing to commence an action on January 19, 2007; (3) appointing a special master or referee to monitor that the premises stay vacant pending the outcome of this case; and (4) compelling the defendants to show cause as to how they came to own the premises. Notably, apart from the general request for unspecified "damages" against all defendants, there is no claim for relief as against the SEC.

## STANDARD OF REVIEW

"In resolving a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), a district court . . . may refer to evidence outside the pleadings" to resolve the jurisdictional issue. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Kamen v. American Tel & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)). The burden of proving subject matter jurisdiction by a preponderance of the evidence is on the plaintiff. Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

However, in reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations contained in the complaint to be true, and view all reasonable inferences that can be drawn from such allegations in the light most favorable to the plaintiff. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007); Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006); Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,

595 F .3d 86, 91 (2d Cir. 2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in Ashcroft v. Iqbal, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662, 129 S. Ct. 1937 (2009). The Court instructed district courts to first "identify [] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 1949 (internal citations omitted) (quoting and citing Twombly, 550 U.S. at 556–57).

Where, as here, the plaintiff is proceeding pro se, "[c]ourts are obliged to construe the [plaintiff's] pleadings . . . liberally." McCluskey v. N.Y. State Unified Court Sys., No. 10–CV–2144 (JFB)(ETB), 2010 WL 2558624, at *8 (E.D.N.Y. June 17, 2010) (citing Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) and McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004)). Nonetheless, even though the Court construes a pro se complaint liberally, the complaint must still "state a claim to relief that is plausible on its face" to survive a motion to dismiss. Mancuso v. Hynes, 379 Fed. App'x 60, 61 (2d Cir.2010) (quoting Iqbal, 129 S. Ct. at

1949); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (applying Twombly and Iqbal to pro se complaint). With these standards in mind, the Court considers the moving defendants' motions to dismiss.

### DISCUSSION

I.   Subject Matter Jurisdiction

Notwithstanding the liberal pleading standard afforded pro se litigants, federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is lacking. Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700-01 (2d Cir. 2000). Unlike lack of personal jurisdiction, lack of subject matter jurisdiction cannot be waived and may be raised at any time by a party or by the Court sua sponte. Id. "If subject matter jurisdiction is lacking, the action must be dismissed." Id. at 700-01; see also Fed. R. Civ. P. 12(h)(3).

Both moving defendants assert that this Court lacks subject matter jurisdiction, albeit for different reasons. The SEC argues that it is immune from plaintiff's suit by sovereign immunity and, to the extent that plaintiff's claims arise under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, plaintiff's claims are unexhausted. Mondkar contends that the Rooker–Feldman doctrine bars plaintiff's claims because plaintiff is essentially appealing the state court foreclosure proceeding in this Court. The Court addresses these issues, in turn, below.

   A.   Sovereign Immunity

The SEC moves pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss plaintiff's claims against it for lack of subject matter jurisdiction. The SEC argues that, because the United States, "'as sovereign, is immune from suit save as it consents to be sued'" (SEC's Mem. of Law at 3 (quoting United States v. Sherwood, 312 U.S. 584, 586 (1946))), such immunity extends to the SEC and

7

precludes plaintiff's claims for monetary damages against it. For the reasons that follow, the Court agrees.

It is well-established that the United States is immune from suit unless it consents to be sued. United States v. Dalm, 494 U.S. 596, 608 (1990). This immunity extends to federal agencies and officers acting in their official capacities. FDIC v. Meyer, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); Dotson v. Griesa, 398 F.3d 156, 177 (2d Cir. 2005); Gildor v. U.S Postal. Serv., 284, 287 (N.D.N.Y. 2005), aff'd, 179 F. App'x 756 (2d Cir. 2006). The Federal Tort Claims Act ("FTCA") provides the framework under which the United States has consented to suits involving common law tort or negligence claims. 28 U.S.C. §§ 2671-80. Courts have routinely held that the SEC is a federal agency within the meaning of the FTCA, 28 U.S.C. § 2671(a). See, e.g., Sprecher v. Graber, 716 F.2d 968, 973 (2d Cir. 1983); Lipkin v. SEC, 468 F. Supp. 2d 614, 621 (S.D.N.Y. 2006); Am. Benefits Grp., Inc. v. Nat'l Assoc. of Sec. Dealers, No. 99-CV-4733, 1999 WL 605246, at *4 (S.D.N.Y. 1999), and the claims plaintiff alleges here – state law fraud and negligence claims seeking money damages from the federal government – are precisely the sort cognizable under the FTCA. Because Congress has not rendered the SEC amenable to such claims, this Court is without subject matter jurisdiction and must dismiss plaintiff's common law claims seeking monetary damages against the SEC pursuant to Rule 12(b)(1).

Even liberally construing plaintiff's claims against the SEC as against the United States, the Court still lacks jurisdiction. The FTCA is generally the exclusive avenue for a suit against the United States for damages resulting from the negligent or wrongful act of any employee within the

8

scope of his or her employment. 28 U.S.C. § 2679(b)(1).[3] As a prerequisite to bringing a FTCA claim in federal court, a plaintiff is required to first exhaust the claim before the appropriate federal agency. 28 U.S.C. § 2675(a). This requirement is jurisdictional. Celestine v. Mount Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005). "The burden is on the plaintiff to plead and prove compliance" with the FTCA's administrative exhaustion requirement. Johnson v. Smithsonian Inst., 189 F.3d 180, 189 (2d Cir. 1999). There is no indication that plaintiff has brought his negligence or fraud claims to the SEC. Thus, plaintiff could not base any action against the SEC on the FTCA. Bakowski v. Hunt, 150 F. App'x 19, 21 (2d Cir. 2005) (district court lacks jurisdiction where plaintiff fails to plead and prove compliance with administrative exhaustion requirements). Moreover, even if plaintiff had properly exhausted his fraud claim against the United States, Congress has expressly carved out such claims from the FTCA's coverage. See 28 U.S.C. § 2680(h); Sanchez Tapia v. U.S., 338 F.2d 416 (2d Cir. 1964) (*per curiam*) ("As to appellant's tort claim against the government, the district court properly held that it had no jurisdiction under 28 U.S.C. § 1346(b) *et seq.*, for the Federal Tort Claims Act does not apply to 'any claim arising out of . . . misrepresentation, deceit.'" (quoting 28 U.S.C. § 2680(h))). Given the inapplicability of the FTCA, it is clear that any damages claims by plaintiff against the SEC are barred by sovereign immunity. Accordingly, the SEC's motion to dismiss for lack of subject matter jurisdiction is granted.[4]

---

[3]There are limited exceptions under the FTCA for cases (1) that seek relief for a violation of the U.S. Constitution, or (2) in which a statute otherwise authorizes claims against the government. 28 U.S.C. § 2679(b)(2)(a)-(b). Given that plaintiff alleges common law fraud and negligence against the SEC, the limited exceptions have no applicability here.

[4]Given the Court's lack of subject matter jurisdiction, the Court need not address that prong of the SEC's motion that seeks dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

B.     Rooker–Feldman Doctrine[5]

Mondkar argues that the Rooker–Feldman doctrine bars plaintiff's claims because plaintiff is essentially appealing the state court foreclosure proceeding, which resulted in the sale of the Commack property. For the reasons set forth below, the Court agrees. To the extent that plaintiff's federal claims seek to undo the prior state court foreclosure of the property and restore title to plaintiff, the Court lacks subject matter jurisdiction because it would require voiding a state court judgment, and such claims are barred by the Rooker–Feldman doctrine. Moreover, any remaining federal claims (either for injunctive or monetary relief) alleging that the loan was invalid because of some alleged securitization of the loan after it was made are also precluded under Rooker–Feldman because any such claims would require invalidating the mortgage loan, the validity of which was the basis of the successful foreclosure judgment in state court.

The Rooker–Feldman doctrine arises from two decisions issued by the United States Supreme Court, Rooker, 263 U.S. 413 and Feldman, 460 U.S. 462, and stands for the proposition that "lower federal courts possess no power whatever to sit in direct review of state court decisions." Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 296 (1970); accord Hoblock v. Albany Cnty. Bd. of Elecs., 422 F.3d 77, 84 (2d Cir. 2005) ("[F]ederal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments."). Though this

---

[5]Mondkar brings her motion to dismiss under Rule 12(b)(6). However, because her Rooker–Feldman argument implicates the court's subject-matter jurisdiction, it is more appropriately brought under Rule 12(b)(1). See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n. 6 (2d Cir. 2006) (noting that Second Circuit has considered standing challenges under both rules in the past but that 12(b)(1) is the more appropriate rule); see also Lance v. Coffman, 549 U.S. 437, 438 n. 8 (2007) (explaining that Rooker-Feldman "concerns a district court's subject-matter jurisdiction"). In any event, as discussed above, the Court is independently obligated to determine whether it has subject matter jurisdiction and, accordingly, considers the Rooker-Feldman argument regardless of which rule Mondkar asserts it under.

doctrine was once improperly equated with that of *res judicata*, see Moccio v. N.Y. State Office of Ct. Admin., 95 F.3d 195, 199–200 (2d Cir. 1996), the Supreme Court has clarified that Rooker–Feldman is jurisdictional in nature, whereas *res judicata* deals with preclusion. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005) ("Preclusion, of course, is not a jurisdictional matter") (citing Fed. R. Civ. P. 8(c) (listing *res judicata* as an affirmative defense)).

In Hoblock, the Second Circuit carefully reviewed the Rooker–Feldman doctrine given the Supreme Court's Exxon Mobil Corporation v. Saudi Basic Industries Corporation decision. See Hoblock, 422 F.3d at 83. Noting that Exxon Mobil had narrowed the scope of the Rooker–Feldman doctrine, the Second Circuit ruled that its application "'is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Hoblock, 422 F.3d at 85 (quoting Exxon Mobil, 544 U.S. at 284). Thus, the Second Circuit set forth four requirements for Rooker–Feldman to apply: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." Id. at 85 (internal citations and quotation marks omitted). The Second Circuit has classified the first and fourth requirements as "procedural" and the second and third requirements as "substantive." See id. As discussed below, all four of these requirements are satisfied in this case.

        1.    Procedural Requirements

The procedural requirements of Rooker–Feldman are readily met here. First, plaintiff lost in state court, which resulted in an entry of judgment and a foreclosure sale. Second, the state court

judgment, which resulted in the April 2008 sale of the Commack property, occurred well before these district court proceedings were commenced in 2012. Thus, to the extent the allegations in plaintiff's complaint attempt to undo the foreclosure, his claims relate to a state-court judgment "rendered before the district court proceedings commenced." See Hoblock, 422 F.3d at 85. Accordingly, the procedural requirements of Rooker–Feldman are met.

        2.        Substantive Requirements

To the extent that plaintiff seeks to challenge the state court judgment of foreclosure, the substantive requirements of Rooker–Feldman are met as well. The substantive requirements of Rooker–Feldman are that "the plaintiff must complain of injuries caused by a state court judgment" and "the plaintiff must invite district court review and rejection of that judgment." Holblock, 422 F.3d at 85. Here, there is no question that the purpose of this lawsuit is to undo the foreclosure. For example, the complaint seeks, among other things, the following: (1) "[i]njunctive relief that the current owner/investor are stayed from leasing, renting and/or selling, transferring or otherwise making such usage of the real property. . ."; (2) "an order directing the defendants to show cause how they came to own such property . . ."; and (3) a declaration "that the defendant's actions constitute a violation of plaintiff's rights." (Compl. at 48-49[6]). Although there are vague references to monetary damages "to be determined," the gravamen of the complaint seeks to undo the foreclosure. (Id. at 48).

It is abundantly clear from the complaint that plaintiff is seeking to undo the state court judgment, and the complaint alleges injuries that occurred as a result of the judgment – specifically, the foreclosure on plaintiff's property. Moreover, plaintiff's claims alleging fraud are entirely

---

[6] Plaintiff's prayer for relief in his complaint does not contain numbered paragraphs. Accordingly, the Court refers to this portion of the complaint by the page numbers assigned by ECF.

dependent on the loan in question being invalid, an issue that has already been resolved against plaintiff in the state court proceeding. Given the factual allegations and relief sought here, which are inextricably intertwined with the state court judgment and would require overturning the state court judgment, this Court concludes that the substantive requirements of the Rooker–Feldman doctrine are met. Although plaintiff has made a cursory reference to seeking monetary damages, it is abundantly clear that the whole purpose of this action is to undo the foreclosure judgment. Therefore, Rooker–Feldman clearly applies.

In sum, this Court concludes that, to the extent that plaintiff's complaint seeks to undermine the state court foreclosure judgment, Rooker–Feldman bars the claims. See, e.g., Jing Chun Wu v. Levine, No. 05-CV1234(NG), 2005 WL 2340722, at *1 (E.D.N.Y. June 3, 2005), aff'd, 314 F. App'x (2d Cir. 2009)("Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the Rooker-Feldman doctrine" (citations omitted)). Accordingly, this Court lacks subject matter jurisdiction to adjudicate any such claims, and Modkar's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction is granted.

II.     Cancellation of the Notice of Pendency Filed by Plaintiff Pursuant to Section 6501 of the N.Y. Civil Practice Laws and Rules

As noted above, Mondkar also requests that this Court cancel the notice of pendency filed by plaintiff concerning the subject property. Under New York law, a plaintiff who brings a lawsuit claiming interest in real property may file a *lis pendens* with respect to the property. See N.Y. Civil Practice Law & Rules §§ 6501-6516. The *lis pendens* (also called a "notice of pendency") alerts future buyers or interest holders of a prior claim to that property. A notice of pendency is mandatory in an action to foreclose a mortgage or to quiet title. Diaz v. Paterson, 547 F.3d 88, 91 at n.2 (2d Cir. 2008) (citing 13 Weinstein, New York Civil Practice: CPLR ¶ 6501.06). Whether

to cancel a notice of pendency under Section 6515 is a matter entirely within the discretion of the Court. Purchase Real Estate Group, Inc. v. Jones, 489 F. Supp.2d 345, 348 (S.D.N.Y. 2007) (citing 5303 Realty Corp. v. O & Y Equity Corp., 476 N.E.2d 276, 280-81 (1984)).

The Second Circuit instructs that "if the underlying complaint [fails to] set [] forth a claim within the scope of C.P.L.R. 6501 . . . the Court should cancel the notice." Diaz, 547 F.3d at 91; see also DLJ Mortgage Capital, Inc. v. Kontogiannis, No. 08 CV 4607(ENV)(RML), 2009 WL 1652253, *5 (E.D.N.Y. June 4, 2009). Where, as here, the complaint is dismissed for lack of subject matter, the notice of pendency should be canceled. See, e.g., Peddie v. 2436 Marion Ave. Assoc. v. Young, No. 01 Civ. 1239(LTS), 2001 WL 995337, *2 (S.D.N.Y. Aug. 30, 2001) (citing N.Y. C.P.L.R. § 6514(b)). Accordingly, the Clerk of the Court, County of Suffolk, is directed to cancel the notice of pendency filed by plaintiff concerning the property located at 200 Kings Park Road, Commack, New York.

III.   Litigation Injunction

"The district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." Lau v. Meddaugh, 229 F.3d 121, 123 (2d Cir. 2000) (*per curiam*). In determining whether or not to restrict a litigant's future access to the courts, the Second Circuit has instructed courts to consider the following five factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed unnecessary burden on

14

>> the courts and their personnel; and (5) whether other sanctions would
be adequate to protect the courts and other parties.

Safir v. U.S. Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." Id. The Court has carefully considered the factors relevant to the issuance of a litigation injunction, and declines to restrict plaintiff's future federal litigation in this District at this time. Specifically, given plaintiff's *pro se* status and his potential unfamiliarity with the full scope of the doctrines of sovereign immunity and Rooker-Feldman (even for an action filed in state court), the Court does not believe that there are sufficient grounds, at this time, for a litigation injunction. However, now that plaintiff is being fully advised of the frivolous nature of his lawsuit, future, duplicative lawsuits filed by plaintiff will not be tolerated by the Court. In short, given plaintiff's well-documented history of vexatious litigation involving duplicative lawsuits seeking to challenge the underlying foreclosure and sale of his home, plaintiff is cautioned that sanctions may be imposed, including in the form of a litigation injunction, should he continue in this course of conduct.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss for lack of subject matter jurisdiction are granted, as is Mondkar's request that the notice of pendency be canceled. Mondkar's request for a litigation injunction against plaintiff is denied. The Clerk of the Court, County of Suffolk, is directed to cancel the notice of pendency filed by plaintiff concerning the property located at 200 Kings Park Road, Commack, New York. The Clerk of this Court shall enter judgment accordingly and close the case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order

would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

JOSEPH F. BIANCO
United States District Judge

Dated:	July 18, 2013
	Central Islip, New York

16